AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| EUGENE GILBERT | ) Case No.  5:21-MJ- 580 (ATB) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendant | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On

or about the date(s) of February 2021 through October 2021 in the county of Onondaga in the Northern District

of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) | Distribution and possession with intent to distribute a controlled substance, to wit, Fentanyl, a Schedule II controlled substance. |

This criminal complaint is based on these facts:
See attached affidavit in support of criminal complaint.

☒   Continued on the attached sheet.

_____
*Complainant's signature*

Task Force Officer Brandon T. Geer, DEA
_____
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   12/7/2021

_____
*Judge's signature*

City and State:   Syracuse, New York

Hon. Andrew T. Baxter, U.S. Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon T. Geer, being duly sworn, depose and state:

## I.    INTRODUCTION

1.  I am a Deportation Officer with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE).  I have been so employed with ICE since November 2017. Previous to my employment with ICE, I was employed as a Border Patrol Agent with the United States Border Patrol from May 2014 until November 2017. I am currently assigned to the United States Department of Justice, Drug Enforcement Administration (DEA) Syracuse Resident Office as a Task Force Officer. I have been a sworn member of the DEA Syracuse Resident Office Task Force since October 2020. As such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21 United States Code, Section 801, et sec. and Title 18, United States code, Section 2516.

2.  I have participated in several multi-agency narcotics investigations. During the course of these investigations, I have conducted or participated in surveillance, undercover transactions, execution of search warrants, debriefings of informants and reviews of tape-recorded conversations and narcotics records. I have participated in numerous searches of residences, businesses and vehicles in which controlled substances, drug paraphernalia, currency, and records were discovered.

1

My experience as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below. I have personally participated in the investigation of the offenses set forth below and as a result of my participation and my review of past and present reports made by other Special Agents of the DEA, and other state and local law enforcement agencies, I am fully familiar with the facts and circumstances of this investigation. My experience as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below.

3.  This affidavit is made in support of a criminal complaint charging Eugene **GILBERT** (**"GILBERT"**) with distribution and possession with the intent to distribute a controlled substance, to wit, Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) on four (4) separate instances. The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement officers, and on my training and experience.  As this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that **GILBERT** possessed with intent to distribute Fentanyl.

## II.    <u>FACTS IN SUPPORT OF PROBABLE CAUSE</u>

4.  Since on or about February of 2021, members of the Syracuse Police Department (SPD) and the Drug Enforcement Administration (DEA), have been investigating Eugene **GILBERT** and his involvement with heroin/Fentanyl trafficking in the Northern District of New York.

2

5.  Based on my review of law enforcement records databases, I have learned, in substance and in part, the following:

      a.  A criminal history inquiry indicated that Eugene **GILBERT** pled guilty to Criminal Possession of a Weapon in the Fourth Degree on September 27, 2021, in Onondaga County Court and was sentenced to a Conditional Discharge as well as an issued Order of protection;  Arrested for Violation of Probation on August 21, 2019, in Onondaga County and was sentenced to eight (8) months;  pled guilty to Criminal Mischief in the Fourth Degree on June 19, 2019, in Syracuse City Court and was sentenced to a Conditional Discharge as well as an issued Order of protection; pled guilty to Petit Larceny on August 20, 2019, in Clay Town Court and was sentenced to eight (8) months imprisonment;  pled guilty to Criminal Contempt in the Second Degree on July 19, 2018, in Onondaga Town Court and was sentenced to eight (8) months imprisonment and issued an Order of Protection;  pled guilty to Criminal Contempt in the Second Degree on July 6, 2017, in Salina Town Court and was sentenced to one (1) year imprisonment and issued an Order of Protection;  pled guilty to Assault in the Second Degree on October 28, 2015, in Onondaga County Court and was sentenced to one (1) year imprisonment and issued an Order of Protection;  pled guilty to Criminal Possession of a Controlled in the Fifth Degree on December 21, 2016, in Onondaga County Court and was sentenced to five (5) years Probation.

6. Based on my conversations with fellow law enforcement agents and my review of surveillance reports, I have learned, in substance and in part, the following:

    a. Since February 2021, **GILBERT** has utilized numerous locations as his residence and/or stash location. Since August 2021, agents have conducted multiple surveillances at 5607 Bear Road, Building O, Apartment 10, North Syracuse, New York 13212 ("**Subject Location**"), identified as the residence of Eugene **GILBERT**. At **Subject Location**, **GILBERT** has been observed entering and exiting the residence utilizing the main door to Building "O". The investigation has revealed that the **Subject Location** is being utilized by **GILBERT** as his residence and stash location. Numerous surveillances of **GILBERT** have shown that he frequently operates a 2011 Red Dodge Ram 1500 Pick-Up, New York Registration "KPK2234" ("**Subject Vehicle**"), including during his illicit drug sales. This vehicle is registered in New York State to Gladys Morales, who resides with **GILBERT**.

7. In the Fall of 2021, Agents met with a Confidential Source, hereinafter referred to as "CS-2", who supplied law enforcement with information that **GILBERT** is a member of a drug trafficking organization operating in the Syracuse metropolitan area. Based on my conversations with CS-2, and with fellow law enforcement agents who have met with CS-2, I have learned, in substance and in part, the following:

    a. CS-2 has known **GILBERT** for a minimum of 6 months and has previously purchased heroin/Fentanyl from **GILBERT** on multiple occasions.

4

    b.   CS-2 advised that **GILBERT** has been observed with upwards of sixty (60) Bricks of heroin/Fentanyl at a time.

    c.   CS-2 advised that he/she has previously purchased heroin/Fentanyl from **GILBERT** at **SUBJECT LOCATION** on multiple occasions.

<u>First Distribution of Fentanyl</u>

8.   On October 14, 2021, Agents met with CS-2, for the purposes of conducting a controlled purchase of Fentanyl from **GILBERT**. CS-2 and his/her car was searched for money and contraband, with negative results, outfitted with an audio/GPS monitoring device, and provided $745 in SPD/Onondaga County District Attorney's Office (OCDAO) confidential funds.

9.   CS-2 contacted **GILBERT**, via phone call/text message, and was directed to meet **GILBERT** at a parking lot off North Salina Street, in the City of Syracuse. CS-2 traveled, under constant surveillance, to the meeting location. Shortly after the arrival of CS-2 at the meeting location, **GILBERT** arrived driving a silver minivan, as witnessed by Agents on surveillance. CS-2 engaged **GILBERT** in conversation regarding the purchase of firearms/ammunition. CS-2 provided **GILBERT** with the $745 in SPD/OCDAO confidential funds, and **GILBERT** provided CS-2 with five 'bricks' of suspected heroin/Fentanyl.

10. CS-2 departed the location, traveling to a meeting location with Agents, under constant surveillance. At the meeting location, CS-2 turned over five 'bricks' of suspected heroin/Fentanyl to Agents. CS-2 and his/her car were searched for money or contraband, with negative results.

5

11. Agents transported the five 'bricks' of suspected heroin/Fentanyl to the DEA Syracuse Resident Office (SRO) for further processing. A sample from these 'bricks' field tested positive for the presence of Fentanyl, as witnessed by your affiant.

<u>Second Distribution of Fentanyl</u>

12. On October 21, 2021, Agents met with CS-2, for the purpose of conducted a controlled purchase of Fentanyl from **GILBERT**. Agents searched CS-2 and his/her car for money or contraband, with negative results. Agents provided CS-2 with $2,100 in SPD confidential funds, outfitted CS-2 with an audio/GPS monitoring device, and outfitted CS-2 with a video recording device. CS-2 contacted **GILBERT**, via phone call/text message, and was directed by **GILBERT** to come to **SUBJECT LOCATION**.

13. CS-2 traveled to **SUBJECT LOCATION**, under surveillance by Agents, and parked in the parking lot. CS-2 contacted **GILBERT**, via text message/phone call, and was further directed to come upstairs up to the **SUBJECT LOCATION**. CS-2 entered Building 'O', and walked upstairs, to Apartment "10", where he/she was greeted, and allowed into the apartment by **GILBERT** and MORALES. CS-2 engaged in brief conversation with **GILBERT**, and exchanged the $2,100 in confidential funds for 14 'bricks' of suspected heroin/Fentanyl. CS-2 departed **SUBJECT LOCATION**, and traveled to a meeting location with Agents, under constant surveillance.

14. At the meeting location, CS-2 turned over 14 'bricks' of suspected heroin/Fentanyl to Agents. CS-2 and his/her vehicle were searched for money and contraband, with negative results.

15. Agents transported the 14 'bricks' of suspected heroin/Fentanyl to the DEA SRO for further processing. A sample from the 'bricks' field tested positive for the presence of Fentanyl, as witnessed by your affiant.

16. A later review of video footage captured during the controlled purchase showed CS-2 entering **SUBJECT LOCATION**.

<u>Third Distribution of Fentanyl</u>

17. On October 27, 2021, Agents met with CS-2, for the purpose of conducted a controlled purchase of heroin/Fentanyl from **GILBERT**. Agents searched CS-2 and his/her car for money or contraband, with negative results. Agents provided CS-2 with $2,250 in DEA Officially Advanced Funds (OAF) and outfitted CS-2 with an audio/GPS monitoring device. CS-2 contacted **GILBERT**, via phone call/text message, and was directed by **GILBERT** to come to **SUBJECT LOCATION**. CS-2 departed for the **SUBJECT LOCATION**, under surveillance.

18. While CS-2 was traveling to the **SUBJECT LOCATION**, agents on surveillance observed **SUBJECT VEHICLE**, registered to MORALES, arrive and park at the **SUBJECT LOCATION** parking lot.

19. CS-2 arrived at the **SUBJECT LOCATION**, and approached **SUBJECT VEHICLE**. **GILBERT** was in the driver's seat of **SUBJECT VEHICLE**, and engaged with CS-2 in conversation. **GILBERT** talked to CS-2 about being able to sell him a gun, and was discussing specific prices, to be further discussed at a later meeting. CS-2 provided **GILBERT** with the $2,250 in OAF, and **GILBERT** provided CS-2 with 15 'bricks' of suspected heroin/Fentanyl. CS-2

departed **SUBJECT LOCATION**, and traveled to a meeting location with Agents, under constant surveillance.

20. At the meeting location, CS-2 turned over 15 'bricks' of suspected heroin/Fentanyl to Agents. CS-2 and his/her vehicle were searched for money and contraband, with negative results.

21. Agents transported the 15 'bricks' of suspected heroin/Fentanyl to the DEA SRO for further processing. A sample from the 'bricks' field tested positive for the presence of Fentanyl, as witnessed by your affiant.

<u>Fourth Distribution of Fentanyl</u>

22. On November 2, 2021, Agents met with CS-2, for the purpose of conducted a controlled purchase of heroin/Fentanyl from **GILBERT**. Agents searched CS-2 and his/her car for money or contraband, with negative results. Agents provided CS-2 with $1,100 in SPD/OCDAO confidential funds and outfitted CS-2 with a video recording device, and an audio/GPS monitoring device. CS-2 contacted **GILBERT**, via phone call/text message, and was directed by **GILBERT** to come to a location in the city of Syracuse. CS-2 departed for the meeting location, under surveillance.

23. While CS-2 was traveling to the meeting location, agents on surveillance observed **SUBJECT VEHICLE**, driven by **GILBERT**, and registered to MORALES, arrive and park at the meeting location. CS-2 engaged **GILBERT** in conversation, and CS-2 provided **GILBERT** with $1,050 in confidential funds, and **GILBERT** provided CS-2 with seven 'bricks' of suspected heroin/Fentanyl. CS-2 departed the meeting location, and traveled to a meeting location with Agents, under constant surveillance.

24. At the meeting location, CS-2 turned over seven 'bricks' of suspected heroin/Fentanyl to Agents. CS-2 and his/her vehicle were searched for money and contraband, with negative results.

25. Agents transported the seven 'bricks' of suspected heroin/Fentanyl to the DEA SRO for further processing. A sample from the 'bricks' field tested positive for the presence of Fentanyl, as witnessed by your affiant.

26. During the course of this investigation, Agents have controlled purchased 41 'bricks' of suspected heroin/Fentanyl from **GILBERT**.  Your affiant is aware from his training and experience that a 'brick' of heroin/Fentanyl mixture typically weighs approximately 1 gram; thus, your affiant believes that **GILBERT** possessed with the intent to distribute approximately 41 grams of Fentanyl.

## III.     CONCLUSION

27.     I believe the foregoing establishes probable cause to believe that **GILBERT** has distributed and possessed with intent to distribute a controlled substance, to wit, Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) on four (4) separate instances. I respectfully request that the Court authorize the filing of this complaint so that the defendant may be charged and brought to court for further proceedings in accordance with the law.

ATTESTED TO BY THE APPLICANT BY TELEPHONE IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.


Brandon T. Geer, Task Force Officer
Drug Enforcement Administration

9

I, the Honorable Andrew T. Baxter, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on December ___7___, 2021, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Andrew T. Baxter
United States Magistrate Judge

10